[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 18-13586
Non-Argument Calendar

_____

D.C. Docket No. 6:17-cv-01415-PGB-GJK

J.P.F.D. INVESTMENT CORPORATION,

Plaintiff - Appellant,

versus

UNITED SPECIALTY INSURANCE COMPANY,

Defendant - Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(April 16, 2019)

Before JILL PRYOR, ANDERSON and HULL, Circuit Judges.

PER CURIAM:

In this insurance contract case, plaintiff-appellant J.P.F.D. Investment Corporation ("JPFD") appeals the district court's August 1, 2018 order denying its Motion for Entry of Judgment on the Appraisal Award and for Attorney's Fees and Costs pursuant to Florida Statutes § 627.428 and dismissing this case. After careful review of the record and briefs, we find no reversible error and affirm.

## I.  BACKGROUND FACTS

Plaintiff JPFD owns a commercial building in Orlando, Florida. In October 2016, defendant United Specialty Insurance Company ("USIC") issued an insurance policy to JPFD providing coverage for direct physical loss of or damage to the property. In January 2017, JPFD's building suffered water damage, which the parties agreed was a covered loss under the policy. The dispute here is not about coverage. Rather, this case arose out of a dispute between JPFD and USIC regarding the amount of loss that resulted from the water damage. We first outline what the policy provides as to loss amount.

### A.    Loss Amount Under the Policy

The policy contained a "Loss Payment" provision, which, inter alia, governed the conditions under which USIC would pay for a covered loss. Specifically, the policy obligated USIC to pay the covered loss in the amount that was: (1) the agreed amount; or (2) the appraisal award, as follows:

g. We will pay for covered loss or damage within 30 days after we receive a sworn proof of loss, if you have complied with all the terms of this Coverage Part, and:

> (1) We have reached agreement with you on the amount of loss; or
> (2) An appraisal award has been made.

The policy also contained a "Loss Conditions" provision that, inter alia, described the appraisal process if the parties disagreed about the amount of loss, as follows:

## 2. Appraisal

If we and you disagree on amount of loss, either may make written demand for an appraisal of the loss. Appraisal is mandatory if invoked by either party. In this event, each party will select a qualified, impartial appraiser. The two appraisers will select a qualified, impartial umpire. If the appraisers cannot agree on the umpire, either you or we may request, after reasonable written notice to the other, that the selection be made by court having jurisdiction. We and you will cooperate with the appraisers and umpire to provide information and access to the property to appraise the loss. If the appraisers agree, they shall issue a detailed appraisal decision which will be binding on you and us. If the appraisers fail to agree, they will submit their differences to the umpire. The umpire shall consider the submissions, independently appraise the loss, and issue a detailed appraisal decision that will be binding on you and us. Each party will:

a. Pay its chosen appraiser; and
b. Bear the other expenses of the appraisal and umpire equally.

In the event the parties could not resolve a dispute about loss amount, the policy contained a service of suit clause, which provided in relevant part:

It is agreed that in the event of the failure by us to pay any amount claimed to be due hereunder, we will, at your request, submit to the jurisdiction of a court of competent jurisdiction within the United States of America.

3

**B.      Parties' Efforts to Resolve Their Disagreement About the Loss Amount**

After plaintiff JPFD's building was water-damaged on January 20, 2017, JPFD promptly notified defendant USIC and submitted a claim under the policy. On January 25, 2017, USIC sent an independent insurance adjuster to inspect JPFD's property.  After the inspection, JPFD's representative, public adjuster Eric Osking of Advanced Building Assessment, Inc., advised defendant USIC that he would be preparing an estimate of damages, which would take some time.

On the same day as the inspection, defendant USIC met with Dryfast Recovery Systems ("Dryfast"), a water extraction company, which shortly thereafter began water extraction and remediation at the property.  In early April 2017, USIC paid Dryfast $152,262.52, the full amount of the invoice less the $2,500 deductible under the policy.

Meanwhile, on March 28, 2017, Osking, on behalf of plaintiff JPFD, submitted to defendant USIC a sworn proof of loss in the amount of $302,772.46, along with Osking's estimate of damages.  On April 26, 2017, defendant USIC notified plaintiff JPFD (by letter to Osking) that it rejected JPFD's proof of loss because, based on the independent adjuster's inspection, USIC disagreed with the scope of the damages in Osking's estimate.  On May 2, 2017, defendant USIC further advised Osking that it would pay plaintiff JPFD the initial undisputed

actual cash value of $91,080.97,[1] but that it had "retained a building consultant to further address any scope of differences between our offices."  The next day, defendant USIC received a "preliminary and partial" sworn proof of loss from Osking for the $91,080.97 amount, which USIC paid to plaintiff JPFD.

On June 15, 2017, after defendant USIC had obtained a comparative estimate of the remaining damages from Dryfast, USIC sent correspondence to Osking and also tried to contact him to discuss their differing damage estimates. When Osking did not respond, defendant USIC selected an appraiser on June 20, 2017, so that an appraisal process could be started.  As noted above, the policy itself provided for an appraisal if the parties did not agree as to the loss amount. On June 26, 2017, USIC formally demanded an appraisal pursuant to the policy's appraisal provision, citing the difference in the amount of damages estimated by the parties, and again Osking did not respond.

In the meantime, on June 23, 2017, plaintiff JPFD filed the instant complaint in Florida state court, alleging defendant USIC breached the insurance contract by refusing to pay for JPFD's losses.[2]  On June 29, 2017, plaintiff JPFD served the

---

[1]USIC arrived at this amount by stating that the property incurred $112,716.90 in building repair costs and $154,762.52 in water extraction costs, for a total replacement cost of $267,479.42.  USIC then subtracted $21,635.93 in recoverable depreciation, the $152,262.52 payment to Dryfast, and the $2,500.00 deductible, which left $91,080.97.

[2]The complaint contained a second count seeking a declaration as to the meaning of certain terms in the policy, which JPFD later voluntarily dismissed.

5

complaint on the State of Florida's Chief Financial Officer, who then electronically delivered a copy of the complaint to defendant USIC on July 3, 2017.  USIC had selected an appraiser and invoked the appraisal process before it was served with the lawsuit.

## C.    Removal to District Court and Appraisal Award

Defendant USIC removed the diversity action to federal district court and promptly moved to compel appraisal.  Over plaintiff JPFD's opposition, the district court granted USIC's motion to compel and directed the parties to obtain an appraisal in the manner provided by the policy.

While the case was stayed, the parties' chosen appraisers agreed to a loss amount of $249,228.96 (replacement cost value) and executed an appraisal award to that effect.  Defendant USIC paid plaintiff JPFD the balance owed of $154,104.19 (actual cash value) and $4,043.80 in recoverable depreciation, which represented the $249,228.96 appraisal award less the $91,080.97 that USIC had already paid JPFD in May 2017.

## D.    Motion for Judgment and Attorney's Fees

On February 2, 2018, plaintiff JPFD then filed the motion that is the subject of this appeal, which is plaintiff's Motion for Entry of Judgment on the Appraisal Award and for Attorney's Fees and Costs.  JPFD's motion asked the district court to enter "a judgment" confirming the appraisal award and awarding JPFD

attorney's fees and costs under Florida Statutes § 627.428 or, alternatively, to hold an evidentiary hearing. Under § 627.428, an insured who obtains a judgment against an insurer under a policy is entitled to recover attorney's fees for "prosecuting the suit in which the recovery is had." Fla. Stat. § 627.428(1).

As to this motion, a magistrate judge entered a report and recommendation ("R&R") setting out the facts outlined above and recommending that plaintiff JPFD's motion be denied and the case dismissed. The R&R concluded that: (1) at the time plaintiff JPFD filed the lawsuit, defendant USIC had never failed to pay under the terms of the policy because under the policy's loss payment provision, the parties never agreed to the loss amount and the appraisal award was not yet made; (2) defendant USIC never denied coverage under the policy, had paid a portion of the loss to plaintiff JPFD, and was in the process of trying to resolve the disagreement about the remaining loss amount through the policy's appraisal process when it was served with, and received notice of, JPFD's lawsuit; and (3) plaintiff JPFD's "filing of the Complaint was not necessitated by [USIC's] actions and any judgment confirming the appraisal award and awarding attorneys' fees to [JPFD] would not be consistent with the purposes of Section 627.428." With respect to the last conclusion, the R&R distinguished two Florida Supreme Court decisions cited by JPFD, Ivey v. Allstate Insurance Co., 774 So. 2d 679 (Fla. 2000), and Johnson v. Omega Insurance Co., 200 So. 3d 1207 (Fla. 2016), because

7

both cases involved insurers that erroneously denied coverage, leaving the insureds with no option but to sue.  The R&R contained a warning to the parties, pursuant to Eleventh Circuit Rule 3-1, that failing to file written objections to the R&R's factual findings and legal conclusions resulted in a waiver of the right to challenge them on appeal.

Plaintiff JPFD timely filed a written objection challenging the R&R's legal conclusions, but JPFD did not dispute, or raise an issue as to, the R&R's stated facts.  Rather, JPFD argued two objections: (1) that USIC repeatedly and incorrectly refused to pay benefits throughout the adjustment process, citing as an example defendant USIC's March 28, 2017 rejection of its initial proof of loss; and (2) that under the Florida Supreme Court's Johnson, only an "incorrect denial of benefits," and not a formal and total "denial of coverage," is needed for an insured to collect attorney's fees under §627.428.

The district court overruled plaintiff JPFD's objections, adopted and confirmed the magistrate judge's R&R, and denied JPFD's motion.  The district court also adopted the R&R's "more-detailed recitation of the facts," noting that neither party had objected to them.  As to JPFD's first objection, the district court explained that JPFD did not have a right to full payment of a sworn proof of loss under the policy's loss payment provision until there was either (1) an agreement as to the loss amount or (2) an appraisal award.  Therefore, defendant USIC's

8

refusal to pay JPFD's March 28, 2017 proof of loss was not a denial of benefits under the policy. The district court noted that defendant USIC had already paid the undisputed portion of plaintiff JPFD's loss and was working toward a resolution as to the loss amount when this suit was filed.

As to plaintiff JPFD's second objection, the district court concluded for the same reasons—no loss payment was yet due under the terms of the policy and defendant USIC was trying to resolve the disagreement when JPFD filed suit—that USIC "did not incorrectly deny Plaintiff benefits" as required by Johnson. Thus, plaintiff JPFD was not "entitled to attorney's fees under § 627.428" or a judgment confirming the appraisal award. The district court also denied JPFD's request for an evidentiary hearing as unnecessary. Accordingly, the district court dismissed JPFD's case, and this appeal followed.

## II. DISCUSSION

On appeal, JPFD makes two arguments, one factual and one legal. Specifically, JPFD argues that: (1) the district court clearly erred in finding that USIC was unaware of JPFD's lawsuit when it demanded an appraisal under the policy and, at a minimum, the district court should have held an evidentiary hearing to resolve this factual issue; and (2) the district court erred in concluding

9

that JPFD was not entitled to attorney's fees under § 627.428 given that after JPFD

filed suit, there was an appraisal award in JPFD's favor that USIC paid.[3]

## A.    Fact Finding About USIC's Notice of JPFD's Lawsuit

For the first time in this Court, JPFD challenges the fact finding in the

magistrate judge's R&R, adopted by the district court without objection, that USIC

did not have notice of JPFD's lawsuit when it selected an appraiser and formally

invoked its right to appraisal under the policy.  By failing to object to this fact in

the district court, however, JPFD has waived appellate review of this issue.

Under Eleventh Circuit Rule 3-1, a party who fails to object to the

magistrate judge's findings or recommendations in the R&R "waives the right to

challenge on appeal the district court's order based on unobjected-to factual and

legal conclusion," provided the waiving party was given proper notice of the time

period to object and the consequences of failing to do so.  11th Cir. R. 3-1.  "In the

absence of a proper objection, however, the court may review on appeal for plain

error if necessary in the interests of justice"  Id.; see also Evans v. Ga. Reg'l Hosp.,

---

[3]In this diversity case, we apply federal procedural law and state substantive law. Gasperini v. Cntr. for Humanities, Inc., 518 U.S. 415, 427, 116 S. Ct. 2211, 2219 (1996). Because this Court has concluded that Florida Statutes § 627.428 and the obligation under it to pay attorney's fees is state substantive law, we apply it.  All Underwriters v. Weisberg, 222 F.3d 1309, 1311-12 (11th Cir. 2000).  We review de novo whether the district court applied the proper standard for the award of attorney's fees and the district court's relevant fact findings for clear error.  Smalbein v. City of Daytona Beach, 353 F.3d 901, 904 (11th Cir. 2003).  If a statute authorizes the award of attorney's fees, we review the district court's decision whether to do so only for an abuse of discretion.  Id.

10

850 F.3d 1248, 1257 (11th Cir. 2017) (explaining that plain error review rarely applies in civil cases and, when it does, "we require a greater showing of error than in criminal appeals"); Resolution Trust Corp. v. Hallmark Builders, Inc., 996 F.2d 1144, 1149 (11th Cir. 1993).

Here, the R&R made several fact findings touching on USIC's notice of JPFD's lawsuit.  In particular, the R&R stated that USIC selected an appraiser three days before JPFD filed its complaint in Florida state court on June 23, 2017, and that USIC formally demanded an appraisal pursuant to the policy three days before the complaint was served on the Chief Financial Officer of Florida on June 29, 2017, and a week before a copy of the complaint was delivered to USIC on July 3, 2017.  Based on the timing of these events, the R&R found that USIC had "already paid a portion of the loss and was in the process of attempting to resolve the remaining dispute through the appraisal process before having notice of the lawsuit."

The magistrate judge's R&R contained a warning to the parties pursuant to Eleventh Circuit Rule 3-1.  JPFD timely filed a written objection challenging both of the R&R's legal conclusions, but JPFD's objection did not identify any facts in the R&R that it claimed were erroneous, disputed, or unsupported by the record.  More importantly, JPFD's objection did not dispute when USIC hired an appraiser or formally demanded an appraisal or when it received notice of JPFD's lawsuit.

11

See Fed. R. Civ. P. 72(b) (requiring a party to file written objections to proposed findings of fact and recommendations in the magistrate judge's report and providing for de novo review by the district court of only those portions of the report that were "properly objected to").[4]

Thus, in its August 1, 2018 order, the district court adopted the R&R's recitation of the facts, noting correctly that neither party had objected to them. The district court further stated, in agreement with the R&R, that USIC "was working toward a resolution [of the remaining loss amount] when this suit was filed."

Given that the magistrate judge informed plaintiff JPFD of the consequences for failing to object to the R&R's findings of fact, JPFD waived any argument to this Court as to the sufficiency of the record to support those facts.

Even if we were to review this claim, we would find no plain error in the district court's fact finding that defendant USIC was attempting to resolve the dispute over the remaining loss amount through the appraisal process before it received notice of plaintiff JPFD's complaint. The record contains, among other things, an affidavit from David Green, defendant USIC's senior claims

---

[4]JPFD's written objection did contain its own statement of facts that did not address the magistrate judge's facts in the R&R. As to the matter of timing, JPFD's objection stated only that JPFD "commenced" its lawsuit on June 23, 2017, before USIC demanded an appraisal on June 26, 2017, which is consistent with the facts in the R&R. JPFD also attached an affidavit from Eric Osking, its representative during the claims adjustment process. Osking's affidavit did not address or dispute whether USIC had hired an appraiser and formally demanded an appraisal before it received notice of JPFD's lawsuit.

12

representative, stating that USIC: (1) attempted to contact JPFD's representative to discuss the disagreement about the remaining loss amount, and, having received no response for five days, hired an appraiser on June 20, 2017; (2) by letter dated June 26, 2017, "formally invoked appraisal" pursuant to the policy; and (3) "never denied coverage for this claim and was attempting to resolve this matter by appraisal when it was served with a lawsuit in July, 2017."  The record also contains a notice of service of process from the State of Florida's Chief Financial Officer stating that service of process was received by his office on June 29, 2017, and a copy was forwarded electronically to USIC's designated agent on July 3, 2017.

This evidence supports the magistrate judge's findings of fact as to defendant USIC's actions before it received notice of JPFD's lawsuit.  Further, in light of this evidence and the other undisputed facts found by the magistrate judge, the district court did not abuse its discretion in denying defendant JPFD's request for an evidentiary hearing.

**B.    Entitlement to Attorney's Fees Under Florida Statutes § 627.428**

Under § 627.428, an insured is entitled to an award of attorney's fees if the court enters a judgment in favor of the insured, as follows:

> Upon the rendition of a judgment or decree by any of the courts of this state against an insurer and in favor of any named or omnibus insured or the named beneficiary under a policy or contract executed by the insurer, the trial court . . . shall adjudge or decree against the

13

> insurer and in favor of the insured or beneficiary a reasonable sum as fees and compensation for the insured's or beneficiary's attorney prosecuting the suit in which the recovery is had.

Fla. Stat. § 627.428(1). The Florida Supreme Court has long held that "the payment of a previously denied claim following the initiation of an action for recovery, but prior to the issuance of a final judgment, constitutes the functional equivalent of a confession of judgment" that also entitles an insured to attorney's fees under the statute. Johnson v. Omega Ins. Co., 200 So. 3d 1207, 1215 (Fla. 2016); see also Wollard v. Lloyd's and Companies of Lloyd's, 439 So. 2d 217, 218 (Fla. 1983). In Johnson, the Florida Supreme Court reaffirmed its prior precedent holding that "bad faith" or "wrongfulness" on the part of the insurance company "is not relevant to a recovery of attorney's fees under section 627.428." 200 So. 3d at 1215 (citing Ivey, 774 So. 2d at 684, and Ins. Co. of N. Am. v. Lexow, 602 So. 2d 528, 531 (Fla. 1992), as prior precedent rejecting a bad faith requirement for statutory attorney's fees). Rather, "it is the fact that the denial of benefits was ultimately incorrect that triggers the statute." Id. at 1216 ("In other words, a 'wrongful' denial in this context means an incorrect denial, not one made in bad faith."). Thus, where an insurance company has not incorrectly denied benefits under the policy, an award of attorney's fees under § 627.428 is unwarranted.[5]

---

[5]We disagree with JPFD that in Johnson the Florida Supreme Court "unambiguous[ly] reject[ed]" the well-established "reasonably necessary" standard in Florida's caselaw. Johnson addressed only what was meant by "wrongfully" denying a claim for purposes of § 627.428 and

Applying these standards here, we agree with the district court that JPFD was not entitled to attorney's fees under § 627.428 because the record established that USIC did not deny benefits under the policy before JPFD filed suit. First, it is important to note that USIC never denied coverage for the water damage to JPFD's building and that the dispute between the parties was about the amount of the covered loss.

Under the loss payment provision of the policy, USIC was not required to pay for a covered loss merely upon JPFD's submission of a sworn proof of loss. Therefore, USIC's rejection of JPFD's initial proof of loss did not constitute a denial of benefits, much less an incorrect one. Instead, USIC's obligation to pay for the admittedly covered loss was conditioned upon the parties either (1) agreeing to a loss amount or (2) obtaining an appraisal award. Under the un-objected to facts found by the magistrate, at the time JPFD filed suit, neither of these conditions had been met.

Furthermore, as the district court found, at the time JPFD filed suit, USIC had already paid the undisputed portion of JPFD's covered losses and was still trying to resolve their disagreement over the remaining loss amount. Specifically,

clarified that the phrase meant "incorrectly" and not "in bad faith."  200 So. 3d at 1215-1216. We do not read Johnson to say that an insured is entitled to attorney's fees under the statute whenever a suit is filed and the insurer subsequently pays additional benefits, regardless of whether the insured's suit was necessary to obtain the additional benefits due under the policy.

15

USIC already had paid a water extraction company $152,262.52 to remove the water and mitigate the damage. Although USIC rejected JPFD's initial proof of loss because it disagreed with the scope of the damages in Osking's estimate, USIC promptly paid JPFD $91,080.97, the undisputed portion of the loss amount, when JPFD submitted a second proof of loss. At that time, USIC also advised JPFD that it was obtaining a comparative estimate to try to resolve their disagreement about the remaining loss amount. When USIC tried to discuss its comparative estimate with Osking, USIC received no response. At that point, on June 20, 2017, USIC retained an appraiser in anticipation of engaging in the appraisal process under the policy. However, JPFD filed suit three days later, on June 23, before USIC could formally initiate the appraisal process, which USIC did a few days later, on June 26.

We also reject JPFD's argument that JPFD was not required to participate in the appraisal process and that JPFD could sue for failure to pay before the appraisal process. This argument ignores the policy's loss payment provision.[6]

---

[6]JPFD relies upon Jerkins v. USF & G Specialty Ins. Co., 982 So. 2d 15 (Fla. 5th Dist. Ct. App. 2008). In Jerkins, the insureds filed a breach of contract action six months after the insurer refused to pay on their property damage claim and without first requesting an appraisal. Id. at 16. The state court concluded that the insureds were entitled to attorney's fees, noting, among other things, that the policy's appraisal clause—providing that either party "may" demand an appraisal—was permissive rather than mandatory. Id. at 18. The Jerkins court further opined that if there had been a mandatory appraisal clause in the policy, the insureds would not have been entitled to attorney's fees. Id. Jerkins is materially distinguishable both because there is no indication that the policy in Jerkins contained a loss payment provision like

16

Under Florida law, an insurance policy must "be construed according to the entirety of its terms and conditions as set forth in the policy." Fla. Stat. § 627.419(1); Swire Pacific Holdings, Inc. v. Zurich Ins. Co., 845 So. 2d 161, 166 (Fla. 2003) ("[W]e have consistently held that in construing insurance policies, courts should read each policy as a whole, endeavoring to give every provision its full meaning and operative effect." (quotation marks omitted)). Construing the loss payment provision and the appraisal provision together, if the parties cannot agree on the covered loss amount, they must undergo the contractual appraisal process before USIC's obligation to pay the covered loss amount ripens.

While JPFD is correct that an appraisal award is not a precondition to suit under the policy, it is a precondition to payment of a covered loss where the parties disagree as to the loss amount. Therefore, any claim for breach of contract for failure to pay would not accrue until after there was an appraisal award that USIC refused to pay.

Here, because the parties could not agree, they were required to undergo the appraisal process and obtain an appraisal award to determine the covered loss amount and trigger USIC's obligation to pay under the policy. Only after USIC

---

the one here and because the facts in Jerkins showed that the insurer "would not have paid the Jerkinses the proper amount of the loss without judicial intervention." Id.

17

refused to pay the amount in the appraisal award would JPFD's breach of contract claim accrue.

Under <u>Johnson</u>, to warrant attorney's fees under § 627.428, there must be (1) a denial of benefits under the policy (2) that is ultimately shown to be incorrect. 200 So. 3d at 1216.  The unobjected-to facts demonstrate that there was not yet a denial of benefits under the policy, much less one that was incorrect.[7]  <u>See</u> <u>Goldman v. United Servs. Auto. Ass'n</u>, 244 So. 3d 310, 312 (Fla. 4th Dist. Ct. App. 2018) (concluding attorney's fees under § 627.428 were not warranted where "the insured never gave the insurer the opportunity to incorrectly deny the benefits before filing a lawsuit").

Indeed, USIC already was preparing to engage in the appraisal process by hiring an appraiser before JPFD filed suit, and USIC formally demanded an appraisal before it was served with JPFD's complaint.  This was not a case in which the claims adjusting process had broken down and the insurer was no longer working to resolve the claim but instead "actually taking steps that breach the contract."  <u>See</u> <u>Hill v. State Farm Fla. Ins. Co.</u>, 35 So. 2d 956, 960 (Fla. 2d Dist. Ct. App. 2010) ("It is only when the claims adjusting process breaks down and the

---

[7]Contrary to JPFD's assertion, the mere fact that there was an appraisal award in JPFD's favor does not establish that there was an incorrect denial of benefits in this case.  Under the terms of the policy and the facts of this case, the benefits at issue (payment for covered losses to which the parties could not agree) were not due until there was an appraisal award.  Thus, the appraisal award established only that USIC's estimate of the remaining damages was wrong, not that USIC incorrectly denied benefits due under the policy.

parties are no longer working to resolve the claim within the contract, but are actually taking steps that breach the contract, that the insured may be entitled to an award of fees under section 627.428, Florida Statutes.")

In short, JPFD would have received the same loss payment without filing suit. All that was needed was for JPFD to participate in the appraisal process as outlined in the policy. Here, the completion of the appraisal process, and not the filing of JPFD's lawsuit, resulted in the payment of substantial additional funds. Accordingly, JPFD was not entitled to an award of attorney's fees under § 627.428(1).

## III.  CONCLUSION

For these reasons, we affirm the district court's August 1, 2018 order denying JPFD's Motion for Entry of Judgment on Appraisal Award and for Attorney's Fees and Costs and dismissing JPFD's case.

**AFFIRMED.**