DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**HERSHEL BRYANT** and **BETTY BRYANT,**
Appellants,

v.

**GEOVERA SPECIALTY INSURANCE COMPANY,**
Appellee.

No. 4D18-189

[ May 8, 2019 ]

Appeal from the Circuit Court for the Seventeenth Judicial Circuit, Broward County; Jeffrey R. Levenson, Judge; L.T. Case No. CACE14-022553.

David P. Pakula of David P. Pakula, P.A., Pembroke Pines, and David A. Neblett and James M. Mahaffey of Perry & Neblett, P.A., Miami, for appellants.

Maureen G. Pearcy and Andrew E. Grigsby of Hinshaw & Culbertson LLP, Coral Gables, for appellee.

TAYLOR, J.

The insureds, Hershel and Betty Bryant, appeal a final summary judgment in favor of GeoVera Specialty Insurance Company ("GeoVera") in the insureds' suit for breach of contract and bad faith. The trial court ruled that the insurance company complied with the homeowner's insurance policy, as a matter of law, by asserting coverage defenses pre-suit and paying an appraisal award during suit. We reverse, because the insurance company's post-suit payment of the appraisal award constituted a confession that it incorrectly denied benefits by erroneously invoking the $1,000 leakage sublimit in its formal response to the claim before the lawsuit. We also reverse summary judgment as to the insureds' bad faith claim. Genuine issues of material fact remain.

### *I. Facts*

*A. The Policy*

In February 2014, the insureds purchased a surplus lines homeowner's insurance policy from GeoVera with a policy term of 12 months. The policy requires the insureds to provide GeoVera with a sworn proof of loss within 60 days of GeoVera's request. The policy conditions further provide: "No action can be brought against us [GeoVera] unless there has been full compliance with all of the terms under Section I of this policy." The policy also contains an appraisal clause that allows either party to demand an appraisal of the loss "[i]f you and we fail to agree on the amount of the loss." The policy's loss-payment provision states that loss is payable "60 days after we receive your proof of loss" and there is either "an agreement with you," "an entry of a final judgment," or "a filing of an appraisal award with us."

A policy endorsement contains a combined $5,000 sublimit for smog, rust, mold, rot, or bacteria coverage and a combined $1,000 sublimit for a covered loss caused by water seepage or leakage that occurs over a period of 14 days or more.

*B. The Loss*

On April 28, 2014, a pipe leak in the insureds' residence resulted in damage to their home. The insureds hired a company to perform emergency water-remediation services at a cost of $6,600. The insureds reported the loss to GeoVera on May 13, 2014. On May 15, 2014, GeoVera's adjuster inspected the property and issued a repair estimate of $21,372.31, allocating $3,597.11 as subject to the ensuing water loss endorsement and $17,775.20 as subject to the mold endorsement.

On May 16, 2014, GeoVera requested a sworn proof of loss. The insureds did not provide a sworn proof of loss within 60 days of the request.

However, on June 19, 2014, before the 60 days for providing the proof of loss had expired, GeoVera sent the insureds a formal response to their claim. In the letter, GeoVera stated that the policy provided "limited coverage for the ensuing water and rot/rust/mold damages." GeoVera stated that, based on its inspection of the damages, it had determined that the water leakage had been ongoing for 14 days or more. GeoVera asserted that coverage was limited to the $1,000 sublimit for water leakage and the $5,000 sublimit for mold, rust, and rot damages. Accordingly, GeoVera issued payment in the amount of $6,000. GeoVera also stated: "Unless additional information is provided to us and we notify you that we are agreeing to reopen your claims and consider the matter further, you

should treat this correspondence as being our formal notification to you of our position." The letter was copied to the insureds' public adjuster.

On June 20, 2014, the insureds' public adjuster conducted its own inspection of the property and issued a repair estimate of $44,731.49. However, there is no record evidence as to whether this estimate was submitted to GeoVera before the insureds filed suit.

*C. The Pleadings*

In November 2014, the insureds filed suit against GeoVera. They later filed a Verified Amended Complaint, asserting three counts: (1) breach of contract; (2) petition for appraisal; and (3) statutory bad faith in violation of section 624.155, Florida Statutes.

On the same day they filed their amended complaint, the insureds provided GeoVera with a sworn proof of loss.

GeoVera answered the amended complaint and asserted affirmative defenses, including the defense that coverage was limited to the $1,000 water leakage sublimit and the $5,000 mold sublimit. In its answer, GeoVera denied the insureds' allegation that the public adjuster demanded an appraisal, but admitted the insureds' allegation that "[GeoVera] refused to begin the appraisal process, notwithstanding the language of the subject policy." GeoVera also admitted that a sworn proof of loss had been filed, but denied that it was timely.

*D. Agreed Order Staying Counts I and II and Abating Count III*

GeoVera moved to stay Counts I and II and to abate Count III. The trial court entered an agreed order on the motion, directing that: (1) the parties were to comply with the policy's appraisal provision; (2) the appraisal award would include an itemization of any damages coming within the leakage sublimit, any damages coming within the mold sublimit, and any covered damages that did not fall within those sublimits; (3) Counts I and II would be stayed until the appraisal award had been issued and GeoVera had sufficient time to pay the award; and (4) Count III would be abated until Counts I and II had been adjudicated.

*E. The Appraisal*

The appraisal award was issued in January 2016. It itemized the damages as follows: $30,963.62 for "dwelling," $14,477.99 for "mold," and $6,600 for "EMS." The appraisal award did not identify any damages as

being subject to the $1,000 leakage sublimit. Nonetheless, GeoVera could have continued to litigate the coverage issue of whether the $1,000 leakage sublimit applied to the loss. *See Johnson v. Nationwide Mut. Ins. Co.*, 828 So. 2d 1021, 1025 (Fla. 2002) (holding that coverage issues are to be "judicially determined by the court" and are "not subject to a determination by appraisers").

Instead, in February 2016, GeoVera paid $29,963.62 to the insureds and $6,600 to the water mitigation company. The total amount paid represented the balance due under the appraisal award after taking into account the $6,000 prior payment and the $5,000 sublimit for mold.

*F. The Lifting of the Stay*

In March 2017, over a year after the appraisal award, the insureds moved to lift the stay and the trial court granted the motion.

*G. Summary Judgment Proceedings and Final Judgment*

GeoVera then moved for summary judgment, arguing that it was not liable for breach of contract or bad faith because: (1) the insureds never disputed GeoVera's adjustment of the loss pre-suit, either with regard to the coverage sublimits or the amount of the loss; (2) the insureds failed to comply with GeoVera's demand for a sworn proof of loss; and (3) GeoVera acted in good faith by participating in the appraisal process and timely paying the appraisal award. In support of its motion, GeoVera submitted the affidavit of one of its managers, who attested that "[n]o estimate or sworn proof of loss was received." The insureds filed a response in opposition to summary judgment.

The trial court granted the motion for summary judgment, ruling that there was no evidence the insureds had disputed GeoVera's adjustment of the loss pre-suit. However, the trial court allowed the insureds to file a motion for rehearing to provide additional evidence showing that their public adjuster had disputed GeoVera's adjustment of the claim.

After the trial court entered final summary judgment, the insureds moved for rehearing, arguing that there were genuine issues of material fact remaining. They filed the affidavits of their public adjuster and Ms. Bryant.

The insureds filed a notice of appeal. We stayed the appeal pending a ruling on the motion for rehearing. The trial court denied the motion for rehearing, allowing this appeal to proceed.

4

## II. Arguments and Analysis

### A. Parties' Arguments

On appeal, the insureds argue that the trial court reversibly erred in concluding that GeoVera complied with the insurance policy as a matter of law. The insureds contend that GeoVera's payment of the appraisal award constituted a confession that it breached the policy by erroneously invoking the $1,000 leakage sublimit. Furthermore, the insureds argue that GeoVera's payment of $1,000 towards the water loss and its denial of coverage above that amount constituted a waiver of the proof-of-loss requirement. Similarly, the insureds maintain that GeoVera's notification that it was limiting the coverage on the water loss to $1,000 constituted an anticipatory breach of contract, giving rise to an immediate right to sue and rendering it unnecessary for the insureds to contest GeoVera's erroneous position before filing suit. Finally, the insureds argue that GeoVera's confession of judgment entitles them to an award of attorney's fees and also serves as the necessary predicate to allow their bad faith claim to proceed.

GeoVera responds that the trial court correctly entered summary judgment in its favor, arguing that: (1) GeoVera's payment of the appraisal award was pursuant to the policy and cannot constitute a breach of contract or a confession of judgment where the insureds prematurely filed suit before they complied with their post-loss duty to provide a sworn proof of loss; (2) GeoVera's pre-suit application of the policy sublimits did not establish a breach or an anticipatory breach where the insureds "never disputed the payment" pre-suit; (3) GeoVera's pre-suit payment of the policy sublimits did not constitute a waiver of the proof-of-loss requirement; and (4) summary judgment was proper on the bad faith count because GeoVera complied with the terms of the insurance contract by participating in the appraisal process and paying in a timely manner.

### B. Standard of Review

A summary judgment is reviewed de novo. *Haber v. Deutsche Bank Nat'l Tr. Co.,* 81 So. 3d 565, 566 (Fla. 4th DCA 2012).

### C. Whether GeoVera's Post-Suit Payment was a Confession of Judgment

The first issue we address is whether GeoVera's payment of the appraisal award constituted a confession that it breached the policy by applying the $1,000 leakage sublimit in its formal response to the claim.

"[I]t is well settled that the payment of a previously denied claim following the initiation of an action for recovery, but prior to the issuance of a final judgment, constitutes the functional equivalent of a confession of judgment." *Johnson v. Omega Ins. Co.*, 200 So. 3d 1207, 1215 (Fla. 2016). The confession-of-judgment doctrine "applies where the insurer has denied benefits the insured was entitled to, forcing the insured to file suit, resulting in the insurer's change of heart and payment before judgment." *State Farm Fla. Ins. Co. v. Lorenzo*, 969 So. 2d 393, 397 (Fla. 5th DCA 2007).

The confession-of-judgment doctrine is limited to situations where the filing of the lawsuit "acted as a necessary catalyst to resolve the dispute and force the insurer to satisfy its obligations under the insurance contract." *See, e.g., State Farm Fla. Ins. Co. v. Lime Bay Condo., Inc.*, 187 So. 3d 932, 935 (Fla. 4th DCA 2016). However, "[i]t is the incorrect denial of benefits, not the presence of some sinister concept of 'wrongfulness,' that generates the basic entitlement to the fees if such denial is incorrect." *Ivey v. Allstate Ins. Co.*, 774 So. 2d 679, 684 (Fla. 2000). Thus, "an incorrect denial of benefits, followed by a judgment or its equivalent of payment in favor of the insured, is sufficient" to constitute a confession of judgment and to allow the insured to recover attorney's fees.[1] *Johnson*, 200 So. 3d at 1219.

An attorney's fees award is also appropriate "where, following some dispute as to the amount owed by the insurer, the insured files suit and, *thereafter*, the insurer invokes its right to an appraisal and, as a consequence of the appraisal, the insured recovers substantial additional sums." *Lewis v. Universal Prop. & Cas. Ins. Co.*, 13 So. 3d 1079, 1081 (Fla. 4th DCA 2009).

---

[1] Most of the cases addressing the confession-of-judgment doctrine involved the application of section 627.428, Florida Statutes. As a surplus lines carrier, however, GeoVera is exempt from the provisions of Chapter 627, including section 627.428, Florida Statutes. *See* § 626.913(4), Fla. Stat. (2014) (providing that "[e]xcept as may be specifically stated to apply to surplus lines insurers, the provisions of chapter 627 do not apply to surplus lines insurance"). Nonetheless, surplus lines carriers are subject to an attorney's fees statute that is nearly identical to section 627.428. *See* § 626.9373, Fla. Stat. (2014). Because section 626.9373 is patterned after section 627.428, the confession-of-judgment doctrine applicable to section 627.428 applies equally to section 626.9373. *See Capitol Specialty Ins. Corp. v. Ortiz*, No. 17-23329-Civ-SCOLA/TORRES, 2019 WL 383868, at *3 (S.D. Fla. Jan. 15, 2019) (explaining that sections 627.428 and 626.9373 "are nearly identical" and that "courts apply the two fee provisions in the same way").

Even after *Johnson,* not all post-suit payments by an insurer will constitute a confession of judgment. We recently held that where an insurer valued a loss, issued payment, and was unaware of the insured's disagreement with the damage valuation until the filing of the complaint, the insurer's timely payment of an appraisal award during the litigation did not constitute a confession that the insurer breached the insurance policy. *See Goldman v. United Servs. Auto. Ass'n,* 244 So. 3d 310, 311–12 (Fla. 4th DCA 2018).

In *Goldman,* we explained that "[t]here was never a breakdown in the claims adjusting or communications process, nor was there a refusal to pay the claim." *Id.* at 311. Furthermore, we characterized the situation as one where "the insured never gave the insurer the opportunity to incorrectly deny the benefits before filing a lawsuit." *Id.* at 312.

The present case is more like *Johnson* than *Goldman.* Here, although GeoVera did not completely deny coverage for the loss, GeoVera did deny coverage above the $1,000 leakage sublimit and the $5,000 mold sublimit. GeoVera's formal response to the claim was not merely a valuation of the loss—it was a partial denial of coverage.

Before the lawsuit, GeoVera knew that the water-loss damages other than mold were at least $10,000,[2] but GeoVera's response was a refusal to pay part of the claim due to a coverage issue. While *Johnson* involved a total denial of coverage, we conclude that an incorrect partial denial of benefits also suffices to give rise to a confession of judgment. *See Ivey,* 774 So. 2d at 684 (holding that insurer's payment after suit was filed operated as a confession of judgment where the insurer incorrectly reduced benefits before suit based on its erroneous assumption that treatment covered only one of two injuries).

Under *Johnson,* "[o]nce an insurer has incorrectly denied benefits and the policyholder files an action in dispute of that denial, the insurer cannot then abandon its position without repercussion." 200 So. 3d at 1218. Here, the insurer's payment of the appraisal award of $37,563.62 demonstrated that GeoVera had abandoned its pre-suit coverage position that the claim was subject to the $1,000 sublimit for long-term water leakage.

In this case, unlike in *Goldman,* GeoVera's response to the claim invoked coverage defenses. And there was a pre-suit refusal by the insurer

---

[2] This $10,000 figure consists of the $6,600 water-remediation bill plus the $3,597.11 repair estimate by GeoVera's adjuster for the ensuing water loss.

to pay a portion of the claim—that is, any amount of water damage (aside from mold) that exceeded the $1,000 leakage sublimit. By invoking the $1,000 leakage sublimit, GeoVera raised a coverage issue that only a court could resolve. This coverage issue went beyond a mere dispute about the valuation of the loss, so the insureds could not have simply invoked the policy's appraisal provision before filing suit.

Because GeoVera invoked the $1,000 leakage sublimit to deny coverage for a portion of the claim, it was of no consequence whether the insureds notified GeoVera pre-suit that they were disputing GeoVera's coverage position or damage valuation. Once GeoVera incorrectly invoked the $1,000 leakage sublimit and notified the insureds that it would not pay any non-mold-related water damage above that amount, GeoVera committed an anticipatory breach of the policy and created an immediate right of action for the insureds, even though GeoVera's repudiation took place before the time prescribed for the promised performance under the policy's loss-payment provision.[3] *See Peachtree Cas. Ins. Co. v. Walden*, 759 So. 2d 7, 8 (Fla. 5th DCA 2000) (holding that an insurer's notice that it would no longer pay benefits constituted an anticipatory breach of its agreement to provide those benefits).

In short, GeoVera's payment of the appraisal award constituted a confession that it incorrectly denied benefits by erroneously invoking the $1,000 leakage sublimit in its formal response to the claim before the lawsuit.

### D. Whether GeoVera Waived the Proof-of-Loss Requirement

The next issue we address is whether GeoVera waived the proof-of-loss requirement by its payment of the policy sublimits and its denial of coverage above those amounts.

A policy provision requiring an insured to submit a sworn proof of loss is a condition precedent to a suit against an insurer. *Soronson v. State Farm Fla. Ins. Co.*, 96 So. 3d 949, 952 (Fla. 4th DCA 2012). But where an insurer's "denial of liability is based upon grounds other than failure to furnish a notice or proof of loss, such denial is tantamount to a waiver of the policy requirements." *Keel v. Indep. Life & Acc. Ins. Co.*, 99 So. 2d 225, 227 (Fla. 1957). "When the insurer denies in advance that it has any liability under the policy coverage, the formal filing of a proof of loss

---

[3] In light of this conclusion, we need not reach the insureds' alternative argument that the affidavits they filed on rehearing created a genuine issue of material fact as to whether they contested GeoVera's adjustment of the claim pre-suit.

becomes, in the eyes of the law, a useless and unnecessary thing that would accomplish nothing." *Id.* Thus, the effect of an insurer's improper repudiation of coverage is "to waive any right to insist upon the insureds' necessarily-thus-futile compliance" with policy conditions. *Wegener v. Int'l Bankers Ins. Co.,* 494 So. 2d 259, 259 (Fla. 3d DCA 1986).

In this case, GeoVera's denial of liability above the sublimits was "based upon grounds other than failure to furnish a notice or proof of loss," which is tantamount to a waiver of a formal proof of loss. *Keel*, 99 So. 2d at 227. Although *Keel* involved a complete denial of coverage, we conclude that its reasoning applies equally to the partial denial of coverage in this case.

Once GeoVera denied in advance that it had any liability above the policy sublimits, "the formal filing of a proof of loss [became], in the eyes of the law, a useless and unnecessary thing that would accomplish nothing." *Id.* Here, a sworn proof of loss would have done nothing to resolve the coverage issues raised in GeoVera's formal response to the claim—for example, it would not have resolved whether the water leakage had been occurring for more than 14 days so as to trigger application of the $1,000 leakage sublimit.

Moreover, because GeoVera had raised coverage defenses, the insureds had no right to demand an appraisal under the policy until the coverage issues had been resolved.[4] *See Citizens Prop. Ins. Corp. v. Demetrescu,* 137 So. 3d 500, 502–03 (Fla. 4th DCA 2014) (holding that insureds could not compel an appraisal until all underlying coverage disputes had been resolved); *see also Johnson v. Nationwide Mut. Ins. Co.,* 828 So. 2d 1021, 1025 (Fla. 2002) (holding that coverage issues are to be "judicially determined by the court" and are "not subject to a determination by appraisers"). Under the circumstances here, a sworn proof of loss would have been a useless act.

We conclude that GeoVera waived the proof-of-loss requirement by denying coverage above the sublimits based upon grounds other than the insureds' failure to furnish a notice or proof of loss. We need not decide whether GeoVera waived the proof-of-loss requirement for the additional

---

[4] The only reason the claim eventually proceeded to appraisal here was because the parties agreed to a line-item appraisal during the litigation to assist in resolving the coverage dispute. However, the coverage questions ultimately would have been questions for the court—not the appraisers.

reason that it admitted liability in some amount when it paid the coverage sublimits.[5]

### E. Whether Summary Judgment was Proper on the Bad Faith Count

Finally, we address whether summary judgment was proper on the bad faith count.

"[A] claim for bad faith pursuant to section 624.155(1)(b)1 is founded upon the obligation of the insurer to pay when all conditions under the policy would require an insurer exercising good faith and fair dealing towards its insured to pay." *Vest v. Travelers Ins. Co.*, 753 So. 2d 1270, 1275 (Fla. 2000). "A duty of good faith must relate to the performance of an express term of the contract and is not an abstract and independent term of a contract which may be asserted as a source of breach when all other terms have been performed pursuant to the contract requirements." *QBE Ins. Corp. v. Chalfonte Condo. Apartment Ass'n, Inc.*, 94 So. 3d 541, 548 (Fla. 2012) (internal quotation marks omitted). The obligation of good faith "on the part of an insurer requires the insurer to timely evaluate and pay benefits owed on the insurance policy." *Vest*, 753 So. 2d at 1275.

"It is well settled that a statutory first-party bad faith action is premature until two conditions have been satisfied: (1) the insurer raises no defense which would defeat coverage, or any such defense has been adjudicated adversely to the insurer; and, (2) the actual extent of the insured's loss must have been determined." *Trafalgar at Greenacres, Ltd. v. Zurich Am. Ins. Co.*, 100 So. 3d 1155, 1157 (Fla. 4th DCA 2012). "[A]n insurer's liability for coverage and the extent of damages, and not an insurer's liability for breach of contract, must be determined before a bad

---

[5] In a long line of cases, Florida courts have held that an insurer waives the requirement of a formal proof of loss when it admits liability in some amount. *See Bear v. N.J. Ins. Co.*, 189 So. 252, 252 (Fla. 1939); *Cincinnati Ins. Co. v. Palmer*, 297 So. 2d 96, 98 (Fla. 4th DCA 1974); *English & Am. Ins. Co. v. Swain Groves, Inc.*, 218 So. 2d 453, 457 (Fla. 4th DCA 1969); *Llerena v. Lumbermens Mut. Cas. Co.*, 379 So. 2d 166, 167 (Fla. 3d DCA 1980). By contrast, in *Rodrigo v. State Farm Florida Insurance Co.*, 144 So. 3d 690, 692 (Fla. 4th DCA 2014), we held that "the insurer did not waive the sworn proof of loss requirement by tendering payment because '[i]nvestigating any loss or claim under any policy or *engaging in negotiations looking toward a possible settlement* of any such loss or claim' does not constitute a waiver of a 'sworn proof of loss' requirement." (quoting § 627.426(1)(c), Fla. Stat. (2007)). Our resolution of the instant case does not require us to address any inconsistency between *Rodrigo* and the *Bear* line of cases.

faith action becomes ripe." *Cammarata v. State Farm Fla. Ins. Co.*, 152 So. 3d 606, 610 (Fla. 4th DCA 2014).

"[A]n appraisal award pursuant to an insurance contract constitutes a 'favorable resolution' of an underlying breach of contract dispute for purposes of filing a bad faith cause of action." *Trafalgar*, 100 So. 3d at 1156. Moreover, a summary judgment in favor of the insurer on the underlying breach of contract action does not preclude an insured's ability to pursue a bad faith claim. *Id.* at 1158.

Here, the insureds' bad faith claim is ripe because GeoVera's liability for coverage and the extent of the damages have been established. GeoVera's payment of the appraisal award, which included amounts in excess of the $1,000 leakage sublimit, constituted a waiver of GeoVera's previous coverage defense based on that sublimit. Although our case law does not require a breach of contract as a prerequisite to a bad faith claim, we note that GeoVera did breach the policy by erroneously invoking the $1,000 leakage sublimit in its formal pre-suit response to the claim.

On this record, GeoVera has not shown that it acted in good faith as a matter of law. Genuine issues of material fact remain as to whether GeoVera exercised good faith and fair dealing towards the insureds when it incorrectly invoked the $1,000 leakage sublimit in its formal response to the claim. GeoVera's liability for bad faith will turn on whether GeoVera's denial of coverage above the $1,000 leakage sublimit was in good faith. *See Vest*, 753 So. 2d at 1275 ("The insurer has a right to deny claims that it in good faith believes are not owed on a policy. Even when it is later determined . . . that the insurer's denial was mistaken, there is no cause of action if the denial was in good faith.").

For the above reasons, we reverse the summary judgment on the bad faith count.

### III. Conclusion

We reverse the final summary judgment and remand with instructions for the trial court: (1) to treat GeoVera's post-suit payment of the appraisal award as a confession of judgment that it breached the policy by erroneously applying the $1,000 leakage sublimit in its formal response to the insureds' claim; (2) to allow the insureds' bad faith claim to proceed; and (3) to conduct further proceedings consistent with this opinion.

*Reversed and Remanded.*

CIKLIN and LEVINE, JJ., concur.

\*     \*     \*

*Not final until disposition of timely filed motion for rehearing.*